**SO ORDERED.**

**SIGNED August 17, 2026.**

JOHN W. KOLWE
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re: | Case No. 25-50337 |
| Gary L. Hudson, II, *Debtor* | Chapter 13 |
| | Judge John W. Kolwe |

## Ruling on Motion to Lift Stay

Before the Court is a Motion to Lift Stay and Co-Debtor Stay filed by Republic Finance, LLC ("Republic"). Republic contends the stay should be lifted because the Debtor's confirmed plan fails to provide for treatment of Republic's allowed secured claim, and the Debtor is not otherwise paying the claim. The Debtor objected to Republic's Motion, asserting that the Plan contains a provision relegating Republic to an unsecured status, which is now res judicata. The Court held multiple hearings on this matter, and the parties filed multiple briefs. The Court has studied the briefs, the applicable law, other sources, and the confirmed Plan, and for the following reasons finds that the Plan does not treat Republic's secured claim, and that the Plan's attempt to "treat" Republic as unsecured is ineffective. Accordingly, the Motion to Lift Stay will be granted.

## **Background**

The Debtor filed his Chapter 13 case and Chapter 13 Plan on April 22, 2025. On May 7, 2025, Republic filed a proof of claim (Claim No. 2) asserting a secured claim of $28,670.00 and an unsecured claim of $1,079.52. Attached to Republic's claim are various supporting documents, including certain UCC filings and an auto title appearing to show that Republic's secured claim was properly perfected in certain household goods and a 2010 Ford Escape. The face of the claim indicates that the secured portion of Republic's claim is based on the value of the collateral as declared by the Debtor at the time of the loan.

On June 26, 2025, Republic filed an Objection to the Plan (ECF # 12). Republic's Objection states that "Debtor's plan of reorganization fails to provide for the treatment of the secured claim either through payment or surrender of the collateral during the 36 month plan. Republic does not accept the plan." *Id*, p. 1. The entire basis for Republic's Objection was that the Plan does not treat its claim.

The hearing on the Debtor's original Plan was held on July 23, 2025. Republic failed to appear at the hearing to prosecute its objection. Following the hearing, the Court ordered the Debtor to file an Objection to the IRS's claim and continued the hearing on confirmation until September 10, 2025. The Court also carried Republic's objection to the September date at the Debtor's request.

Republic also failed to appear at the September 10th hearing. The Debtor did not offer or otherwise agree to address Republic's objection. Thus, the Court overruled Republic's Objection for failure to appear and prosecute the objection and ordered the Debtor to file an Immaterially Amended Plan to address minor issues. The Court then confirmed the Immaterially Amended Plan (ECF #26) by a Confirmation Order dated October 31, 2025 (ECF #29).

On January 16, 2026, Republic filed its Motion for Relief from Stay on the 2010 Ford Escape. Republic's motion is premised on its assertion that the Debtor's plan does not provide for its allowed secured claim, which is the same assertion it made in its objection to the Debtor's plan that was overruled for failure to prosecute.

The Debtor filed an objection to Republic's motion asserting that Republic's claim is provided for in the plan because it is treated as unsecured under certain nonstandard plan provisions set forth in Section 9 of the Confirmed Plan, specifically the following sentence: "Any claim with a secured value of $0 or otherwise not treated in Part 3 herein, shall be treated as a general unsecured claim." (ECF #26). Thus, the Debtor claims that Republic's claim was rendered unsecured by this language in the Plan. Further, the Debtor contends that Republic is bound by this Plan provision since the Court overruled Republic's objection to confirmation raising the same issue underlying its Motion for Relief from Stay.

Based on the parties' positions, the Court must determine whether the Debtor's confirmed Plan effectively strips Republic of its allowed secured claim.

## Discussion

The Court will begin its discussion with the primary cause of the current dispute between the parties: Republic's failure to appear at and prosecute its objection to the Debtor's Plan at either of the confirmation hearings. The Debtor contends that the Court's overruling of Republic's objection necessarily means that Republic is bound by the Plan as confirmed under the doctrine of res judicata. The Court agrees. The question facing the Court, however, is not whether the Plan binds Republic. Rather, it is the effect of the Plan, as confirmed, on Republic's claim, which will be determined by the language of the Plan itself.

Before examining the Plan, the Court will briefly review the options generally available to debtors under the Bankruptcy Code for dealing with secured claims.

### A. Options for Treating Secured Claims in Chapter 13 Cases.

Republic filed its proof of claim asserting a secured claim approximately two weeks after the Debtor filed this case, and it appears undisputed that Republic possesses a "deemed allowed" secured claim.[1] Section 1325(a)(5) of the Code sets forth

[1] Republic timely filed its proof of claim asserting a secured claim in the amount of $28,670.00 and attaching documentation in support of the claim. No party in interest has objected to Republic's proof of claim. Accordingly, Republic's claim is an "allowed secured claim" under 11 U.S.C. §§ 501(a) and 502(a); *see also* Fed. Rule Bankr. P. 3001 and 3002.

three alternative options for the treatment of each "allowed secured claim provided for by the plan:" (i) acceptance of the plan by the holder of the claim as provided under § 1325(a)(5)(A), (ii) compliance with Chapter 13 cramdown requirements as allowed under § 1325(a)(5)(B), *or* (iii) surrender of the collateral to the holder of the claim as authorized under § 1325(a)(5)(C). *See* 11 U.S.C. § 1325(a)(5). A court generally must confirm a plan if any one of these three alternatives is satisfied with respect to an "allowed secured claim provided for by the plan" (and assuming all other requirements for confirmation are met).

Section 1325(a)(5), however, applies only to allowed secured claims "provided for by the plan." The term "provided for by the plan" is not defined in the Code, but it has been interpreted as meaning "to make provision for," "stipulate to," "deal with," or "refer to" a claim in a plan. *See* 8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][b] (Richard Levin & Henry J. Sommer eds., 16th ed.), *citing Rake v. Wade*, 508 U.S. 464, 473-74, 113 S. Ct. 2187, 2192-93 124 L.Ed.2d 424 (1993).

Finally, a plan is confirmable even if it does not provide for an allowed secured claim, as the Code does not mandate that a debtor provide for such claims in the plan. *See* 11 U.S.C. § 1322(b)(2) ("[T]he plan *may*–modify the rights of secured creditors ..." (emphasis added)). If the plan does not provide for an allowed secured claim, then the claim generally survives confirmation, and the holder of such claim may seek relief from the automatic stay to pursue contractual remedies against the collateral.

> Because a plan need not modify allowed secured claims it is discretionary with the debtor whether to make provision in the chapter 13 plan for allowed secured claims. In the event the plan makes no provision for one or more allowed secured claims, the plan is to be confirmed by the court regardless of its acceptance or rejection by holders of allowed secured claims not provided for by the plan and without any other showing being required under section 1325(a)(5). **The holders of allowed secured claims not provided for by the plan may seek appropriate relief from the automatic stay in furtherance of any contractual or other remedies available against the chapter 13 debtor or their collateral**.

8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][b] (emphasis added).

## B. The Debtor's Plan does not provide for Republic's Claim.

The Court now turns to the question of whether the Debtor's Plan in this case provides for Republic's deemed allowed secured claim by effectively reclassifying it as unsecured. This question can be answered within the context of the confirmed plan, which is essentially a contract binding on all creditors.

> The parties' rights are established by the confirmed Plans. When interpreting a confirmed plan, Courts apply traditional principles of contract interpretation. *Official Creditors Comm. of Stratford of Tex., Inc. v. Stratford of Tex., Inc. (In re Stratford of Tex., Inc.)*, 635 F.2d 365, 368 (5th Cir. 1981). Absent an ambiguity, Courts review the express language of the governing document to determine the intent of the parties. *Kimbell Foods, Inc. v. Republic Nat'l Bank of Dallas*, 557 F.2d 491, 496 (5th Cir. 1977)*, aff'd sub. Nom. United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *In re Victory Markets, Inc.*, 221 B.R. 298, 303 (2d Cir. BAP 1998) (explaining a confirmed plan is a binding contract between a debtor and its creditors, for which the "starting point for review" is its plain language.)

*In re Linn Energy, LLC*, 576 B.R. 532, 535–36 (Bankr. S.D. Tex. 2017), *aff'd sub nom. Matter of Linn Energy, L.L.C.*, 927 F.3d 350 (5th Cir. 2019). *See also*, *e.g.*, *In re Charis Hosp., L.L.C.*, 360 B.R. 190, 193 (Bankr. M.D. La. 2007) (noting that "a confirmed plan essentially is a contract" subject to ordinary contract interpretation principles); *In re Burk Dev. Co., Inc.*, 205 B.R. 778, 786 (Bankr. M.D. La. 1997) (noting that a confirmed plan is "itself a legal contract").

Turning to the Debtor's confirmed Plan, Part 1, titled "Notices," contains instructions for both Debtors and Creditors which is set forth just before a table of three "checkbox" choices for the Debtor to indicate whether certain provisions, which may have the effect of modifying creditors' rights, are included in the Plan. Just above the table, the Plan provides: "The following matters may be of particular importance. ***Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as 'Not Included' or if both boxes are checked, the provision will be ineffective if set out later in the plan***." *See* Plan, p. 1 (ECF #26) (emphasis in original). This table follows in the Debtor's Plan:

| | | |
|---|---|---|
| A limit on the amount of a secured claim, set out in Section 3.2, which may result in a partial payment or no payment at all to the secured creditor. | ☐ Included | ☑ Not included |
| Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section 3.4. | ☐ Included | ☑ Not included |
| Nonstandard provisions, set out in Part 9. | ☑ Included | ☐ Not included |

The nonstandard provisions in Part 9 of the Debtor's Plan are as follows:

> For those claims treated in sections 3.2 and 3.3 herein, Secured creditors' lien(s) shall remain until the secured claim is paid, effective upon discharge. Each of the above secured claims in Section 3.2, if allowed, shall be paid the secured value, as set forth above, or the amount of the secured claim filed, whichever is less. **Any claim with a secured value of $0 or otherwise not treated in Part 3 herein, shall be treated as a general unsecured claim.** Any claim filed as an unsecured claim, upon confirmation, shall be estopped from later attempting to validate or otherwise assert a security interest, lien, encumbrance, or privilege in any collateral owned by the Debtor and shall furthermore cancel any recordation of any security interest, lien, encumbrance, or privilege within 60 days of discharge.

*Id*, p. 5 (emphasis added).

The Debtor essentially argues that Section 3 of the Plan does not treat *any* secured claim, so any secured claim necessarily must be treated as a general unsecured claim under the plain language of Section 9's nonstandard provisions. In the Debtor's view, not only did the checkbox in Part 1 of the Plan put creditors on notice that the Plan contains special provisions in Section 9, but those special provisions are clearly written and lead to only one conclusion, that any secured claim is to be treated as a general unsecured claim.

Republic points out that the first checkbox provision clearly states that the Plan does not include "[a] limit on the amount of a secured claim, set out in Section 3.2, which may result in a partial payment or no payment at all to the secured creditor."[2] In Section 3.2 of the Plan, concerning "Request for valuation of security, payment of fully secured claims, and modification of undersecured claims," the Debtor checked the box for "None," failing to request valuation, establish payment of a fully secured claim, or modify—i.e., cramdown—an undersecured claim. Republic argues

[2] This quote is taken from the first checkbox provision of the Plan.

that the special provisions in Section 9 are incompatible with the checkbox noting that there is no limit on the amount of a secured claim and that payments on secured claims will not be reduced.

The Court agrees with Republic. First, the checkbox provisions included at the beginning of the Court's form Chapter 13 Plan are intended to clearly put creditors on notice of important provisions, and creditors must be able to rely on them.[3] Here, a secured creditor reading the first checkbox provision would clearly expect that there would be no limit on payments on secured claims. The special provisions the Debtor included in Section 9 completely contradict the plain language of the first checkbox, which in the Court's view is not a valid method of relegating a secured creditor to an unsecured class, particularly given the structure of this District's form Chapter 13 plan.

Not only that, but immediately before the checkboxes, the Plan provides notice that "[i]f an item is checked as 'Not Included' or if both boxes are checked, the provision will be ineffective if set out later in the plan." Because the Debtor checked the box indicating that a limit on the amount of a secured claim is "Not Included," any later provision in the Plan at odds with that election, including the nonstandard provisions in Section 9, is ineffective. The Debtor is therefore bound to pay secured claims in full or face a motion to lift stay and to allow the creditor to proceed in state court to foreclose on the collateral.

Second, the special provisions in Section 9 largely do not even apply to the circumstances of this case, as they refer to claims treated in Sections 3.2 and 3.3, but the Plan in this case does not treat any claims in any part of Section 3. The special provisions appear to be boilerplate language included in other plans, not a bespoke provision written for this Plan.

[3] LBR 3015-1(a) adopts the Local Form Plan, which is "to be utilized in all chapter 13 cases instead of the Official Form Plan…without alteration, except as otherwise provided in the Local Form Plan or for any changes described in Fed. R. Bankr. P. 9009(a)."

To be clear, and as mentioned above, if the Debtor had intended to modify Republic's secured claim, he could have done so within the structure of this District's form Plan. Section 3.2 of this District's form Chapter 13 Plan provides the following:

**3.2 Request for valuation of security, payment of fully secured claims, and modification of undersecured claims.**
***Check one:***

☐ **None**. *If "None" is checked, the rest of § 3.2 need not be completed.*

**The debtor(s) request that the court determine the value of the secured claims listed below, as follows:**

☐ ***Non-governmental secured claims.*** For each non-governmental secured claim listed below, the debtor(s) state that the amount to be paid by the Trustee to the creditor as secured is set out in the column headed "Amount of secured claim." For each listed secured claim, the *Amount of secured claim* will be paid in full with interest at the rate stated below until the *Amount of secured claim* or the secured amount set forth in a proof of claim filed by the secured creditor, whichever is less, has been paid in full.

***Secured claims of governmental units.*** For secured claims of governmental units, unless otherwise ordered by the court, the value of a secured claim listed in a proof of claim filed in accordance with the Bankruptcy Rules controls over any contrary amount listed below.

| Name of Creditor | Amount of creditor's total claim | Collateral description | Value of collateral | Amount of secured claim | Interest rate |
|---|---|---|---|---|---|
| | $ | | $ | $ | % |
| | $ | | $ | $ | % |
| | $ | | $ | $ | % |

To modify Republic's claim, the Debtor should have checked the first box in Part 1 of the Plan to put Republic on notice that Section 3.2 included a limit on the amount of its secured claim, checked the box under Section 3.2 to request that the Court determine the value of the secured claim, and listed Republic's claim on the table with the Debtor's own asserted value of the collateral. If the Debtor had done so and Republic objected, the Court could have determined the value of the collateral, for purposes of determining the extent of Republic's secured claim under § 506 of the Code, as part of the confirmation process.[4] If Republic either failed to object or objected but failed to pursue its objection, as occurred here, the plain language of the Plan would operate to modify Republic's claim. Since the Debtor did not check the box

[4] § 506(a)(1) of the Code provides in part that "[a]n allowed secured claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1).

affirmatively indicating he intended to modify Republic's claim, his later attempt to do so in Part 9 was ineffective.

The Debtor is bound by his own decisions, and the Court must apply the plain language of the confirmed Plan. Thus, Republic is entitled to relief from the stay.

**Conclusion**

It is a bit ironic for this Court to grant Republic relief from the automatic stay given its complete lack of diligence at the confirmation stage of this case. Even so, the Court is bound to interpret the Plan put forth by the Debtor. Page one of the Plan clearly indicates in the checkbox table that the Debtor is not modifying any secured claims in Section 3.2 of the Plan—the Section of the Plan specifically designed to address collateral values in relation to determining the extent of a creditor's secured status for purposes of § 506 of the Code. Page one of the Plan also clearly states that "if an item is checked as 'Not Included' or if both boxes are checked, the provision will be ineffective if set out later in the plan." Thus, even though the Debtor is attempting to modify Republic's secured status as part of the nonstandard provision in Part 9 of the Plan, that attempt is simply ineffective under the plain language of the Plan. Moreover, the Court does not and will not condone the use of Part 9 in such a fashion when Part 3.2 of the Plan was specifically designed to address cramdown of a creditor's claim as allowed by § 1325(a)(5)(B). Accordingly, the Court finds that Republic is entitled to relief from the automatic stay notwithstanding its lack of diligence during the confirmation process may make it undeserving of such relief.

The Court will enter an order providing the Debtor 15 days to file a modified plan to address the claim of Republic. If a modified plan is not timely filed, Republic is authorized to submit an order granting its Motion.